UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

K. PETROLEUM, INC., *et al.*,

      Plaintiffs,

      v.

LENAPE GATHERING CORP., *et al.*,

      Defendants.
_____

22-CV-334-LJV
DECISION & ORDER

On May 4, 2022, K. Petroleum, Inc. ("KPI"), and E-ZAD Energy Corporation ("E-ZAD") commenced this action against Lenape Gathering Corp. ("Lenape") and PPP Future Development, Inc. ("PPP"). Docket Item 1. KPI and E-ZAD claim that they have the right to build a pipeline on land that the parties call the "Ellery lots" but that the defendants, who both have existing pipelines on the Ellery lots, refuse to mark those pipelines and are otherwise interfering with the plaintiffs' right to construct a pipeline. *Id.* at ¶¶ 52-57. In addition, the plaintiffs claim that the defendants breached a gas-gathering agreement between Lenape and E-ZAD that granted the plaintiffs the right of first refusal to purchase Lenape's pipelines located on the Ellery lots. *Id.* at ¶¶ 44-50.

The day after filing the complaint, the plaintiffs moved for a preliminary injunction as well as an expedited hearing in connection with that motion. Docket Items 5, 6. On May 23, 2022, the defendants responded, Docket Item 19, and about a week later, the plaintiffs replied, Docket Item 20. The Court heard oral argument on June 7, 2022, and the parties submitted supplemental briefs after oral argument, Docket Items 23, 25.

On July 27, 2022, the Court gave the parties notice that it was converting the plaintiffs' motion for a preliminary injunction into a motion for partial summary judgment on a single issue: "whether the '[p]laintiffs are permitted to construct and operate their gas pipeline on the Ellery lots above, below[,] and across the pipeline owned by [the d]efendants.'"  Docket Item 29 (quoting Docket Item 1 at ¶ 59).  Two weeks later, the plaintiffs and defendants both filed supplemental briefs on that issue.  Docket Items 30, 31.

For the following reasons, the Court grants the plaintiffs' converted motion for partial summary judgment.

## **FACTUAL BACKGROUND**[1]

Plaintiff E-ZAD owns about forty natural gas wells on the Ellery lots under three leases now assigned to E-ZAD.  Docket Item 1-5 (assignment of wells and leases to E-

---

[1] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  See Collazo v. Pagano, 656 F.3d 131, 134 (2d Cir. 2011).  The following facts are taken from the leases and their assignments, Docket Items 1-2 to 1-5, 20-1 to 20-5 (leases and assignments); the easements, Docket Items 1-6 and 1-7; the gas-gathering agreements and their assignments, Docket Items 1-8, 19-2, 19-3, 20-4, and 20-5; and the well-withdrawal letter, Docket Item 20-6.  Certain apparently undisputed facts providing necessary background information come from the declaration of KPI's and E-ZAD's President, Jam Khorrami, Docket Item 5-5, as well as the declaration of Lenape's President, John Holko, Docket Item 19-1.  The defendants have not disputed the authenticity of the leases and their assignments, the easements, the gas-gathering agreements and their assignments, or the well-withdrawal letter.  And they have agreed that there are no factual issues relating to the converted motion for partial summary judgment.  See Docket Item 24 at 17, 34 (defense counsel's agreeing at oral argument that the issue was legal—not factual); Docket Item 23 (defendants' supplemental brief not raising any factual issue); Docket Item 31 (defendants' submission advising that the "[d]efendants have no objection to the Court's conversion of the . . . motion" into a motion for summary judgment and that the defendants have "brief[ed] *the legal issues necessary for this Court to make its decision*") (emphasis added).

ZAD). Those wells were drilled in the 1980s by The Lenape Resources Corporation ("Lenape Resources"), an affiliate of defendant Lenape. Docket Item 5-5 at ¶ 3; Docket Item 19-1 at ¶¶ 5-6. Plaintiff KPI now operates those gas wells. Docket Item 5-5 at ¶ 4.

In 2021, KPI and E-ZAD decided to build their own pipeline—a right that they assert the three leases give them. *Id.* at ¶ 11. But in April 2022, when KPI and E-ZAD were about to start construction on the Ellery lots, the defendants objected and claimed that a set of easements and gas-gathering agreements prohibit the plaintiffs from constructing a pipeline. *Id.* at ¶ 13; Docket Item 1-9.

Those three sets of documents—that is, the leases, easements, and gas-gathering agreements—form the basis of the parties' dispute. An overview of those documents is necessary to understand each party's position and to resolve whether the plaintiffs are entitled to construct a pipeline.

**THE ELLERY LEASES**

The plaintiffs claim that three leases dating back to 1975 permit them to construct a pipeline on the Ellery lots. Docket Item 5-1 at 5-7; Docket Item 5-5 at ¶ 11.

The original lessee—Resource Exploration, Inc. ("Resource Exploration")—leased the right to drill for oil and gas from the then-owners of three lots in the Town of Ellery: Murvel E. Ostrander and Margaret L. Ostrander, Docket Item 1-2 (the "Ostrander lease"); James D. Bayliss, Docket Item 1-3 (the "Bayliss lease"); and Mary B. Oshei, Docket Item 1-4 (the "Oshei lease") (collectively, the "Ellery leases"). Each lease was recorded with the Chautauqua County Clerk: The Ostrander lease was recorded on March 3, 1975, Docket Item 1-2 at 4; the Bayliss lease was recorded on July 17, 1975,

Docket Item 1-3 at 4; and the Oshei lease was recorded on March 30, 1983, Docket Item 1-4 at 3.

The Ellery leases gave the lessee the right to drill for oil and gas and to transport gas and oil through the Ellery lots.  Specifically, the Ostrander lease granted the lessee "the right to install and maintain lines to convey water, oil, steam, electricity, air[,] and gas to, from, over[,] or across the [p]remises."  Docket Item 1-2 at ¶ 1.  The Bayliss lease likewise granted the lessee "the right to install and maintain lines to convey water, oil, steam, electricity, air[,] and gas to, from, over[,] or across the [p]remises."  Docket Item 1-3 at ¶ 1.  And the Oshei lease granted the lessee the right "to transport by pipelines or otherwise across and through said lands oils, gas[,] and their constituents from the [lot] and other lands, regardless of the source of such gas or the location of the wells."  Docket Item 1-4 at ¶ 1.

The Ellery leases were assigned and reassigned several times.  At one point, Lenape Resources was the assigned lessee, and in the 1980s, it drilled about forty natural gas wells on the Ellery lots.  Docket Item 19-1 at ¶¶ 5-6.  After additional assignments, on May 21, 2015, E-ZAD was assigned, and continues to hold, the lessee rights in the Ellery leases and the wells drilled pursuant to those leases.  Docket Item 1-5.

**THE LENAPE GATHERING AGREEMENT AND ELLERY EASEMENTS**

After Lenape Resources drilled wells on the Ellery lots in the 1980s, it had no means to transport and deliver natural gas from the wells.  Docket Item 19-1 at ¶ 7.  So, on October 1, 1984, it entered into a gas-gathering agreement with Lenape (the "Lenape Gathering Agreement") whereby Lenape would construct and operate a

4

pipeline system to transport gas from Lenape Resources' wells.  *Id.*; *see also* Docket Item 19-2 (Lenape Gathering Agreement).

As a part of the Lenape Gathering Agreement, Lenape Resources agreed that "it is or will be selling its gas pursuant to a gas sales and purchase agreement which will require the use of the [g]athering [s]ystem [*i.e.*, the pipeline] in order to deliver the gas to the purchasers."  Docket Item 19-2 at 2.  In other words, Lenape Resources promised to exclusively use Lenape's pipelines.  Moreover, Lenape Resources agreed that any assignment of "its existing or after[-]acquired leasehold rights on the leases listed in Exhibit B, [including the Ellery leases,] . . . shall be made subject to the terms and conditions of [the Lenape Gathering Agreement]."[2]  *Id.* at 3.

Before constructing the pipeline, Lenape obtained easements from the Ostranders, Docket Item 1-7 (the "Ostrander easement"); and Bayliss, Docket Item 1-6 (the "Bayliss easement") (collectively, the "Ellery easements").  The Ellery easements granted Lenape "a permanent right-of-way and easement for the purpose of laying, constructing, maintaining, operating, repairing, altering, replacing, or removing from time to time a pipe[]line."  Docket Item 1-6 at 2; Docket Item 1-7 at 2.  The two easements were recorded on February 25, 1985.  Docket Item 1-6 at 3; Docket Item 1-7 at 3.

---

[2] The copy of the Lenape Gathering Agreement submitted to this Court does not include "Exhibit B" to which the agreement refers, *see* Docket Item 19-2, but the defendants represent that Exhibit B includes the Ellery leases and that Lenape Resources promised that any assignments of its lessee rights would be made subject to the Lenape Gathering Agreement, *see* Docket Item 19-1 at ¶ 8.

**LEASE ASSIGNMENTS AND THE GAS-GATHERING AGREEMENTS**

As previously mentioned, the Ellery leases and the wells drilled under those leases have undergone a series of assignments. At the time of some, but not all, of those assignments, Lenape also entered into gas-gathering agreements with the newly assigned lessee.

Around May 2003, the successor in interest to Lenape Resources conveyed ownership of the wells to Linn Energy, LLC ("Linn Energy"). Docket Items 20-1, 20-2. At the same time, Linn Energy entered into a gas-gathering agreement with Lenape (the "Linn Gathering Agreement"). Docket Item 19-3. Like the Lenape Gathering Agreement, the Linn Gathering Agreement required Linn Energy to deliver gas from its wells on the Ellery lots exclusively through Lenape's pipelines. Id.

Linn Energy later assigned its interest to Unbridled Energy NY LLC ("Unbridled"), Docket Item 20-3, and in March 2007, Unbridled entered into a gas-gathering agreement with Lenape (the "Unbridled Gathering Agreement"), Docket Item 1-8. That agreement again required Unbridled to transport gas from its wells on the Ellery lots exclusively through Lenape's pipelines. Id. Specifically, under the Unbridled Gathering Agreement, the producer agreed that Lenape would "receive from [Unbridled] . . . all volumes of natural gas produced by the [w]ells which are to be delivered to a purchaser." Id. at 3.

In 2010, Hayden Harper Energy, KA, LLC ("Hayden Harper"), acquired Unbridled's interest in the Ellery leases and associated wells. Docket Item 20-4. In May 2015, E-ZAD acquired Hayden Harper's interests in the Ellery leases and the associated wells. Docket Item 20-5. Lenape did not enter new gas-gathering agreements with either Hayden Harper or E-ZAD. But Hayden Harper and E-ZAD

became the successors to the Unbridled Gathering Agreement and were bound by that agreement to transport gas from their wells on the Ellery lots exclusively through Lenape's pipeline.  See Docket Item 20-4 at 3, 21 (assigning Unbridled Gathering Agreement to Hayden Harper); Docket Item 20-5 at 3, 43 (assigning Unbridled Gathering Agreement to E-ZAD); Docket Item 20-6 at 1 (acknowledging that E-ZAD and KPI are the successors in interest to Unbridled Gathering Agreement).

Although the Unbridled Gathering Agreement required the producer—currently E-ZAD and KPI—to exclusively use Lenape's pipelines for those wells drilled under the Ellery leases, the producer could withdraw one or more wells from the agreement on sixty days advance written notice to Lenape.  Docket Item 1-8 at 3.  On May 6, 2022, E-ZAD and KPI provided written notice to the defendants that they were withdrawing four wells from the Unbridled Gathering Agreement.  Docket Item 20-6.

**E-ZAD'S AND KPI'S EFFORTS TO CONSTRUCT A PIPELINE**

For a short period of time, E-ZAD and KPI produced gas and transported it through Lenape's pipelines.  Docket Item 5-5 at ¶ 6.  But in 2016, E-ZAD and KPI ceased production, citing their dissatisfaction with Lenape's pipelines, the volume of gas lost, and the transportation costs charged by Lenape.  Id. at ¶¶ 7-8; Docket Item 19-1 at ¶¶ 20-21.  The plaintiffs have not transported any gas from the wells since shutting in the wells.[3]  Docket Item 5-5 at ¶ 10; Docket Item 19-1 at ¶ 20.

---

[3] In the oil and gas industry, the termination of production from a well capable of production is called "shutting in" the well.  Docket Item 5-5 at ¶ 8; Docket Item 19-1 at ¶ 20.

In 2021, KPI and E-ZAD decided that the market was right to build their own pipeline. Docket Item 5-5 at ¶ 11. KPI and E-ZAD therefore obtained the engineering plans and permits necessary to construct a pipeline that would cross the Ellery lots near Lenape's and PPP's pipelines. *Id.* at ¶¶ 11-12; *see* Docket Item 19-1 at ¶ 29.

But in April 2022, shortly before KPI was set to begin construction of the pipeline, the defendants objected. Docket Item 5-5 at ¶ 13. On April 11, 2022, Chad Bugman, the owner of PPP, sent Jam Khorrami, the President of KPI and E-ZAD, an email claiming that the Ellery easements prohibit the plaintiffs from constructing a pipeline on the Ellery lots and that a gas-gathering agreement requires the plaintiffs to use Lenape's system. *Id.*; Docket Item 1-9. The plaintiffs have asked the defendants to mark the location of their pipelines so that construction on the new pipeline may begin safely, but the defendants have not yet done so. Docket Item 5-5 at ¶¶ 15-16.

## PROCEDURAL BACKGROUND

On May 5, 2022, the plaintiffs moved for a preliminary injunction, arguing that they were likely to succeed on their claims for declaratory and injunctive relief. Docket Item 5-1 at 5-7. The parties briefed that motion, and on June 7, 2022, the Court heard oral argument. *See* Docket Items 19, 20, 21.

At oral argument, the Court asked the parties why it should not convert the motion for a preliminary injunction into one for partial summary judgment on the plaintiffs' claim that it is permitted to construct a pipeline on the Ellery lots. *See* Docket Item 24 at 21-24, 31, 34. The parties agreed that this was a legal—not a factual—issue and that a factual hearing on the specific question of whether the plaintiffs had a right to construct a pipeline was not necessary. *See id.* at 24-25. The Court invited the parties

to submit supplemental briefs, *id.* at 25, and asked the parties to identify "any factual issues that [the Court] need[ed] . . . an evidentiary hearing on" before deciding whether the plaintiffs were entitled to "an injunction allowing them to build a pipeline," *id.* at 34. The parties both filed supplemental briefs, but neither identified any issue of fact that required an evidentiary hearing. *See* Docket Items 23, 25.

On July 27, 2022, the Court therefore gave the parties formal notice that it was converting the motion for a preliminary injunction into a motion for partial summary judgment on the plaintiffs' request for declaratory relief. *See* Docket Item 1 at ¶¶ 51-59. In light of that conversion, the Court permitted both sides to file additional submissions on the plaintiffs' entitlement to construct and operate a pipeline. On August 10, 2022, each side filed a supplemental brief. Docket Items 30, 31.

## **LEGAL PRINCIPLES**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant—that is, the party seeking summary judgment—has the initial burden of showing that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts"

9

showing that there is a genuine dispute about a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). If the nonmovant fails to carry this burden, the court may grant summary judgment. *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

**I.  RIGHT TO CONSTRUCT PIPELINE UNDER ELLERY LEASES**

New York Real Property Law ("RPL") section 291 provides that a duly recorded conveyance of real property is superior to a later-recorded conveyance.[4] *See Williams*

---

[4] A federal court, sitting in diversity jurisdiction, applies the choice-of-law rules of the forum state—here, New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For claims wholly concerned with title to real property, New York applies "the law of the state where the property is located." *See Williams v. GMAC Mortg., Inc.*, 2014 WL 2560605, at *3 (S.D.N.Y. June 6, 2014). Here, the Ellery leases and easements are located in New York, and New York law therefore applies. Moreover, both the plaintiffs' and defendants' briefs cite New York law, and no party argues that any other state's substantive law should apply. *See* Docket Items 5-1, 19,

*v. Ross*, 277 A.D.2d 776, 777, 716 N.Y.S.2d 756, 757 (3d Dep't 2000).  Easements are "clearly . . . conveyance[s] of real property" that are "subject to the recording act."  *Miles v. De Sapio*, 96 A.D.2d 970, 971, 466 N.Y.S.2d 848, 849-50 (3d Dep't 1983).  Accordingly, "a grantee of land takes title subject to duly recorded easements that have been granted by [the grantee's] predecessors in title."  *Zunno v. Kiernan*, 170 A.D.2d 795, 796, 565 N.Y.S.2d 900, 901 (3d Dep't 1991) (quoting 49 N.Y. Jur. 2d Easements § 149).

The Ellery leases do not simply give the lessee the right to drill for oil and gas on the Ellery lots; they also grant the lessee an easement to construct and maintain pipelines on those lots.  Specifically, paragraph one of the Ostrander and Bayliss leases, titled "Rights Granted," grants the lessee "the right to install and maintain lines to convey water, oil, steam, electricity, air[,] and gas to, from, over[,] or across the [p]remises."  Docket Item 1-2 at ¶ 1 (Ostrander lease) (some capitalization omitted); Docket Item 1-3 at ¶ 1 (Bayliss lease) (same).  The Oshei lease includes a similar provision, permitting the lessee "to transport by pipelines or otherwise across and through said lands oils, gas[,] and their constituents from the subject and other lands."  Docket Item 1-4 at ¶ 1.

The easements in the Ellery leases are conveyances and therefore subject to section 291 of the RPL.  Because the 1975 and 1983 recordings of the Ellery leases occurred before the 1985 recording of the Ellery easements, the defendants' easements

---

20, 23, 25.  "[S]uch 'implied consent . . . is sufficient to establish choice of law.'"  *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (citation omitted).

from the Ostranders and Bayliss were taken subject to the plaintiffs' earlier recorded leases with the Ostranders and Bayliss.  *Compare* Docket Items 1-2, 1-3, and 1-4 (Ellery leases), *with* 1-6 and 1-7 (Ellery easements).  In other words, the plaintiffs' right to construct a pipeline under the Ellery leases is superior to the defendants' later-recorded easements.

Accordingly, not only do the Ellery leases grant the plaintiffs the right to construct a pipeline, but to the extent that the plaintiffs' rights and the defendants' rights are irreconcilable, the plaintiffs' right to construct a pipeline prevails because it is superior.[5] *See* Restatement (Third) of Property (Servitudes) § 4.12 (2000) ("In the event of irreconcilable conflicts in use, priority of use rights is determined by priority in time, except as a later-created servitude takes free of another under the applicable recording act.").

In the defendants' response and at oral argument, the defendants did not dispute that the Ellery leases granted the plaintiff a real property right to construct a pipeline. *See* Docket Item 19 at 14 ("[The p]laintiffs have shown that they were assigned rights under the Ellery [l]eases, *which include the right to construct pipelines*." (emphasis added)) (defendants' response); Docket Item 24 at 20 ("[Defendants' counsel: ] We do[ not] deny that *there is a real property interest that the plaintiffs have*." (emphasis

---

[5] That is not to say that the plaintiffs may construct a pipeline without regard for the defendants' rights under the Ellery easements.  Indeed, when two parties hold "separate servitudes creating rights to use the same property," they "must exercise their rights so that they do not unreasonably interfere with each other."  Restatement (Third) of Property (Servitudes) § 4.12 (2000).  Thus, where possible, the plaintiffs "must exercise their" right to construct a pipeline so that it does not "unreasonably interfere" with the defendants' right to construct and operate a pipeline under the Ellery easements.

added)). But in their supplemental brief, the defendants changed course and argued for the first time that the plaintiffs' right to construct a pipeline is not a real property right.[6] Docket Item 23 at 6-7.

The defendants base their argument that the plaintiffs' right to construct a pipeline is not a real property right on section 39 of the New York General Construction Law. *Id.* That statute provides that "[o]il wells and all fixtures connected therewith[] . . . and rights held under and by virtue of any lease . . . to . . . produce petroleum oil, shall be deemed personal property for all purposes except taxation." Therefore, the defendants argue, the right to construct a pipeline is personal property, not real property. Docket Item 23 at 6-7.

---

[6] In their supplemental brief, the defendants also argue that the plaintiffs' right to construct a pipeline under the Ellery leases is not absolute but rather is a right granted "only to the extent necessary to produce oil and/or gas from the premises." Docket Item 23 at 3-4. Although they do not say so explicitly, the defendants suggest that if there already is an operational pipeline (perhaps one that the defendants own and operate), the plaintiffs do not have the right to construct another pipeline. But the defendants do not cite any specific language in the Ellery leases providing that the plaintiffs' right to install and maintain a pipeline is so limited. *See id.* Although the Ostrander and Bayliss leases state that "the right to install and maintain lines to convey . . . gas" is limited to that "in connection with" the leaseholder's storing and removing gas "on the [lease] [p]remises and neighboring lands," the Court could not find any qualifying language as extreme as the defendants suggest; the Ellery leases do not say, for example, that the lessees may build pipelines "to the extent necessary." *See* Docket Items 1-2, 1-3.

The defendants also do not cite any caselaw instructing the Court to read the plaintiffs' right to construct a pipeline under the Ellery leases so narrowly. *See* Docket Item 23 at 3-4. Nor do they cite any caselaw suggesting that the Court should deviate from the ordinary rule for easements: "where there is an ambiguity [in an easement], the clause granting [it] must be construed in favor of the *grantee*"—here, the plaintiffs. *See Sedor v. Wolicki*, 206 A.D.2d 854, 855, 616 N.Y.S.2d 124, 126 (4th Dep't 1994) (emphasis added). So the easement in the Ellery leases is construed in favor of the plaintiffs, further counseling against adding a limitation to the plaintiffs' right to construct a pipeline.

13

But that statute does not change the nature of the plaintiffs' easement. As noted above, the Ellery leases were not merely oil and gas leases but also granted the right to "install and maintain lines" to convey oil and gas and to "transport by pipelines" oil and gas. That real property easement conveyed a real property right.

By the defendants' logic, the plaintiffs' right to construct a pipeline is not a real property right simply because it was included in an oil and gas lease. On the other hand, defendant Lenape's right to construct a pipeline is a real property right because it was granted via easements that were not in an oil and gas lease. That asks too much of the statute. And other than citing the statute itself, the defendants provide no support for the proposition that section 39 requires such an illogical leap.[7] Both the plaintiffs'

---

[7] As the plaintiffs note, section 39 codified the developing New York common law that New York is a non-ownership or non-possessory jurisdiction with respect to oil and gas rights. *See* Docket Item 25 at 2 (citing Bruce M. Kramer, *Property and Oil and Gas Don't Mix: The Mangling of Common Law Property Concepts*, 33 Washburn L.J. 540, 542 (1994)); *see also* George A. Bibikos & Jeffrey C. King, *A Primer on Oil and Gas Law in the Marcellus Shale States*, 4 Tex. J. Oil Gas & Energy L. 155, 192 (2009). Stated another way, in New York, oil and gas are not owned until extracted from the ground, and a property owner therefore owns only the right to explore for and extract oil and gas. Kramer, 33 Washburn L.J. at 542. Although there is little New York law on issues relating to oil and gas leases, *see* Bibikos & King, 4 Tex. J. Oil Gas & Energy L. at 191 ("New York presents essentially a blank slate as to all significant oil and gas lease issues."); *see also Beardslee v. Inflection Energy, LLC*, 761 F.3d 221, 228 (2d Cir. 2014) (citations omitted) ("[T]here is a 'dearth of authority in New York relating to oil and gas leases' . . . ."), New York caselaw supports the proposition that oil and gas leases include not only the right to explore for oil and gas but also an implied easement to access and use the property "to the extent reasonably necessary" to remove oil and gas. *See Schlueter v. Shawnee Operating Co.*, 141 Misc. 2d 1000, 1003, 535 N.Y.S.2d 867, 869 (Sup. Ct. Erie Cnty. 1988). What is more, when individuals acquire a property right in New York with notice of an existing oil and gas lease on the property, they take ownership "knowing that [their] surface ownership may be burdened in part, and, in very rare cases perhaps, in its totality, by the reasonable exercise of the rights of the owner of the oil and mineral estate." *Schlueter*, 141 Misc. 2d at 1003-04, 535 N.Y.S.2d at 869; *see also Allen v. Gouverneur Talc Co. Inc.*, 247 A.D.2d 691, 692, 668 N.Y.S.2d 755, 756 (3d Dep't 1998) ("[A] subsequent conveyance of a portion of the surface of a large tract of land wherein mineral rights previously have been conveyed cannot limit or

and the defendants' easements are real property rights subject to section 291 of the RPL.

The fact that Lenape obtained separate and specific rights-of-way and easements to construct its pipeline is of no moment. Lenape Resources, not Lenape, was the leaseholder on the Ellery leases. *See* Docket Item 19-1 at ¶¶ 6-7. So when Lenape wanted to construct a pipeline on the Ellery lots, it could not rely on any right in the Ellery leases to do that. Instead, Lenape needed a separate easement or other agreement to give it that right, and it therefore obtained separate and specific rights-of-way and easements from the Ellery lot owners, *see id.* at ¶ 9. But that does not mean that the lease did not give the leaseholder the right to construct a pipeline; it simply means that without more, Lenape, a non-party to the lease, may not have been able to rely on that right.

In sum, the Ellery leases include easements that grant the plaintiffs the right to construct a pipeline. And because the Ellery leases were recorded before the Ellery easements were recorded, the plaintiffs' right to construct a pipeline is superior to any conflicting right that the defendants might have.

---

restrict the use to be made of the surface of the subsequently conveyed portion of said tract by the grantee of the mineral estate."). In other words, the grantee of a property right subject to an oil and gas lease acquires that right subject to the easement implied in the lease, likewise suggesting that section 39 does not deprive the plaintiffs of their *expressly stated* easement to construct a pipeline on the Ellery lots.

## II. IMPACT OF GAS-GATHERING AGREEMENTS

The defendants also argue that even if the plaintiffs have a property right to construct a pipeline, the Unbridled Gathering Agreement and the Lenape Gathering Agreement prevent the plaintiffs from exercising that right. *See* Docket Item 19 at 13-15. This Court disagrees. Neither gathering agreement stands in the plaintiffs' way.

### A. Unbridled Gathering Agreement

Although the plaintiffs became the successors in interest to the Unbridled Gathering Agreement, *see* Docket Item 20-5 at 3, 43, that agreement no longer obligates the plaintiffs to transport natural gas from four of the plaintiffs' wells through the defendants' pipelines. The Unbridled Gathering Agreement expressly permits the producer—here, the plaintiffs—to "withdraw any one or more [w]ells from" the agreement on sixty days advance notice. Docket Item 1-8 at 3. On May 6, 2022, the plaintiffs provided written notice to the defendants that they were withdrawing four wells—Lloyd Bayliss 294, Bayliss 330, Miller 2, and Ostrander 287—from the Unbridled Gathering Agreement. Docket Item 20-6. Therefore, as of July 5, 2022, at the latest, those four wells no longer were subject to the Unbridled Gathering Agreement. The Unbridled Gathering Agreement therefore does not prevent the plaintiffs from constructing a pipeline connected to the four withdrawn wells.

### B. Lenape Gathering Agreement

The Lenape Gathering Agreement also does not obligate the plaintiffs to transport their natural gas through the defendants' pipelines.

"Under New York law, a contract that appears complete on its face is an integrated agreement as a matter of law." *Indep. Energy Corp. v. Trigen Energy Corp.*,

16

944 F. Supp. 1184, 1196 (S.D.N.Y. 1996). Moreover, "a subsequent contract regarding the same subject matter supersedes the prior contract." *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 581 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 48 (2d Cir. 2018).

The language of the Linn Gathering Agreement and the Unbridled Gathering Agreement makes clear that those agreements superseded the Lenape Gathering Agreement. In 1984, Lenape Resources and Lenape entered the Lenape Gathering Agreement. *See* Docket Item 19-1 at ¶ 8; Docket Item 19-2. When Linn Energy acquired some of Lenape Resources' wells in 2003, *see* Docket Item 20-1; Docket Item 20-2, Lenape entered a new gathering agreement with Linn Energy, *see* Docket Item 19-3. The Linn Gathering Agreement concerned the same gathering system and wells as the Lenape Gathering Agreement and included an explicit integration clause, stating that "[t]his [a]greement sets forth the entire understanding of the parties." Docket Item 19-3 at 10. The Linn Gathering Agreement therefore superseded the Lenape Gathering Agreement.

In the same way, the Unbridled Gathering Agreement superseded the Linn Gathering Agreement. Entered in 2007, the Unbridled Gathering Agreement concerned Lenape's same gathering system and the same wells as in the Linn Gathering Agreement, and it included the same integration clause as the Linn Gathering Agreement. Docket Item 1-8 at 10. So the Unbridled Agreement therefore superseded the Linn Agreement.

Thus, the Unbridled Gathering Agreement—not the Lenape Gathering Agreement—is the operative agreement between the plaintiffs and the defendants.

17

And, as just explained, the Unbridled Gathering Agreement permitted the plaintiffs to withdraw the four wells that they already have withdrawn from the agreement. The Lenape Gathering Agreement therefore does not preclude the plaintiffs from constructing a pipeline to those wells.

What is more, although Lenape Resources agreed in the Lenape Gathering Agreement that any subsequent "sale, conveyance, [or] assignment . . . [of the Ellery leases] shall be made subject to . . . [the Lenape Gathering] Agreement," Docket Item 19-2 at 3, none of the Ellery lease assignments was made subject to—or even refers to—the Lenape Gathering Agreement, see Docket Item 20-1 (assignment from Lenape Resources to Linn Energy); Docket Item 20-2 (corrected assignment from Lenape Resources to Linn Energy); Docket Item 20-3 (assignment from Linn Energy to Unbridled); Docket Item 20-4 (assignment from Unbridled to Hayden Harper); Docket Item 20-5 (assignment from Hayden Harper to E-ZAD). For that reason as well, the Lenape Gathering Agreement does not prevent the plaintiffs from constructing a pipeline to the four withdrawn wells.

## CONCLUSION

For the reasons stated above, the Court grants the plaintiffs' motion for partial summary judgment and finds that the "[p]laintiffs are permitted to construct and operate their gas pipeline on the Ellery lots above, below[,] and across the pipeline owned by [the d]efendants, subject to reasonable safeguards which this Court may determine are necessary." The parties shall contact the Court to schedule a status conference to discuss the next steps in this case.

SO ORDERED.

Dated:   September 12, 2022
            Buffalo, New York

                                                  ***/s/ Lawrence J. Vilardo***
                                                  LAWRENCE J. VILARDO
                                                  UNITED STATES DISTRICT JUDGE